THE PEOPLE *ex rel.* THE CITY OF LELAND GROVE, Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF SPRINGFIELD, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—87—0633

Opinion filed March 9, 1988.—Rehearing denied April 8, 1988.

944

Douglas T. Wilcox, Assistant Corporation Counsel, of Springfield, for appellant.

Douglas G. Brown, of Douglas G. Brown, P.C., of Springfield, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

On June 10, 1985, Leland Grove adopted a resolution expressing its intent to annex a certain tract of land and authorizing publication of this intent. On June 12, 1985, legal notice of Leland Grove's contemplated annexation appeared in the State Journal-Register, as required by section 7—1—13 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13).

Leland Grove subsequently passed annexation ordinances covering the subject territory on June 22, 1985, and also on June 24, 1985. These ordinances, together with the other required documentation, were recorded on June 24, 1985, in the office of the recorder of deeds in Sangamon County at 8:02 a.m. and 8:04 a.m.

Leland Grove asserts that it has provided municipal services to the territory since June 22, 1985, to the present time. Springfield has never challenged the annexation of the territory in question by Leland Grove, and the time for such a challenge has expired. Ill. Rev. Stat. 1985, ch. 24, par. 7—1—46.

On June 21 or June 24, 1985, Dr. John J. Donovan, the principal owner of the subject property, filed a petition requesting the city of Springfield to annex the property in question. The date of this filing is in serious dispute. On November 4, 1985, Leland Grove filed a *quo warranto* action challenging Springfield's attempted annexations. A *quo warranto* proceeding is a challenge of the defendant's right to exercise jurisdiction over territory or to hold public office. In a *quo warranto* proceeding, the burden is on the defendant to justify the exercise of jurisdiction. (*People ex rel. Skonberg v. Paxton* (1965), 64 Ill. App. 2d 294, 211 N.E.2d 591; *People ex rel. Karns v. City of Caseyville* (1968), 99 Ill. App. 2d 60, 241 N.E.2d 23.) Leland Grove filed motions for partial summary judgment in connection with Springfield's June 24, 1985, and June 25, 1985, annexation attempts. The trial court granted summary judgment on these motions and Springfield has not appealed from these orders. Leland Grove subsequently filed a motion for summary judgment in connection with Springfield's third attempted annexation, which occurred on July 30, 1985. The trial court, on August 11, 1986, granted Leland Grove summary judgment and awarded it costs. Springfield appealed from this order and

Leland Grove has cross-appealed from that portion of the order which failed to award it attorney fees and failed to impose fines against Springfield.

On appeal, Springfield contends that they were the first party to "initiate" annexation proceedings. It is well settled that two annexation proceedings involving the same territory cannot legally be pending at the same time, and between annexation proceedings, priority is afforded to the proceeding "initiated" first in time. The initial inquiry in the instant case is what act or acts constitute "initiation" of an annexation proceeding. Regarding Springfield's attempted annexation pursuant to section 7—1—8 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—8), the filing of the petition by Donovan "initiated" the annexation proceeding. (See *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 150 N.E.2d 178; *Village of Oak Lawn v. Village of Bridgeview* (1968), 92 Ill. App. 2d 284, 236 N.E.2d 293.) Conflicting evidence appears in the record concerning the question of whether the Donovan petition was filed on June 21 or June 24, 1985. Regarding Leland Grove's attempted annexation pursuant to section 7—1—13 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13), no statutory provision or case law specifically addresses the issue of what act initiates the annexation proceeding. At least four logical possibilities exist:

(1) Passage of the ordinance or resolution authorizing publication of the municipality's intention to annex certain property;

(2) Publication of the intention to annex the property as required by section 7—1—13 (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13);

(3) Passage of the ordinance of annexation; or

(4) Filing of the ordinance of annexation.

On appeal, Springfield argues that passage of the annexation ordinance by Leland Grove, which occurred on June 22 and June 24, 1985, initiated Leland Grove's annexation proceedings. Springfield relies upon *In re Annexation to City of Prospect Heights* (1982), 107 Ill. App. 3d 1045, 438 N.E.2d 574, in support of this argument. In *Prospect Heights*, the municipality commenced annexation proceedings, pursuant to section 7—1—2 of the Code (Ill. Rev. Stat. 1979, ch. 24, par. 7—1—2), by passing an ordinance expressing its desire to annex certain property on January 21, 1980. This provision contains the procedure for judicially supervised annexation. Prospect Heights filed the ordinance in the circuit court on February 6, 1980. Arlington Heights filed the ordinance in the circuit court on February 6, 1980. Arlington Heights contended that the ordinance was invalid because a petition pursuant to section 7—1—8 of the Code (Ill. Rev. Stat. 1979,

ch. 24, par. 7—1—8) was pending at the time the ordinance was adopted. The trial court noted that the prior petition was dismissed on the morning of February 6, 1980, the same day the ordinance was filed but before the actual filing took place. The court reasoned that a section 7—1—2 proceeding is not "initiated" until the ordinance is filed, and concluded that since the prior petition was dismissed before the subsequent ordinance was filed, the subsequent ordinance annexing the territory was valid. The court stated:

"Arlington Heights correctly asserts that no annexation proceeding may be initiated legally where an annexation petition is pending with regard to the same territory. (*City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, 180 N.E.2d 488; *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 150 N.E.2d 178.) An annexation proceeding commenced pursuant to section 7—1—2, by the adoption of an ordinance expressing a desire to annex, is not considered to be 'initiated' for purposes of this rule, however, until the ordinance is filed in the circuit court. (*Village of La Grange; Touchette.*) Since the ordinance in the present case was not filed until after the prior petition was dismissed, the annexation proceeding was legally initiated.

Arlington Heights' reliance on *Village of Oak Lawn v. Village of Bridgeview* (1968), 92 Ill. App. 2d 284, 236 N.E.2d 293, and *In re Incorporation of Village of Capitol Heights* (1968), 41 Ill. 2d 256, 242 N.E.2d 247, is misplaced. Although the court in *Village of Oak Lawn* found the ordinance to be invalid due to the pendency of a prior petition, the ordinance was of an entirely different nature than the ordinance in the present case. That ordinance was adopted under section 7—1—8 (Ill. Rev. Stat. 1979, ch. 24, par. 7—1—8), which provides for the initiation of annexation proceedings by the filing of a petition signed by the landowners of the territory sought to be annexed. Hence the ordinance subsequently adopted by the annexing entity serves to finalize the annexation process. Similarly, in *Village of Capitol Heights* the ordinance in question actually effected the annexation. The present case is obviously distinguishable since the ordinance in question, adopted pursuant to section 7—1—2, merely expressed Prospect Heights' desire to annex the property and thereby constituted only the first step in the annexation proceedings." *Prospect Heights*, 107 Ill. App. 3d at 1048, 438 N.E.2d at 577.

Springfield argues that a strong analogy can be drawn between the ordinance expressing a desire to annex which was in issue in

*Prospect Heights* and the ordinance authorizing publication of an intention to annex property pursuant to section 7—1—13 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13), which is present in the instant case. Springfield concludes this argument by stating that in both cases, these steps should be viewed as preliminary to "legal initiation," and that legal initiation of a section 7—1—13 annexation proceeding is the passage of the annexation ordinance. We agree with Springfield's argument in this regard.

Springfield also notes that section 7—1—13 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13) was amended to require publication of intent to annex at least 10 days prior to the passage of an ordinance of annexation. Springfield contends that the presence of the amendatory language indicates that the legislature changed this statute to protect the property owner. We also agree with Springfield's contention in this regard. The 10-day waiting period between publication of intent to annex and passage of an annexation ordinance allows the property owner time to react by filing objections if he does not wish to be annexed, and to file an annexation petition pursuant to section 7—1—8 with another contiguous municipality to avoid being forced into the original municipality under section 7—1—13. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13.) We believe the legislature intended to provide a period in which the affected property owners are allowed to prevent the undesirable consequence of a section 7—1—13 annexation (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13), either by lodging complaints with the "forcing" municipality or presenting a voluntary petition to another contiguous municipality, as was done here in the instant case. Competent evidence in the record indicates that the notice provisions of section 7—1—13 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13) were apparently enacted in response to complaints by landowners who lived in unincorporated areas whose land was being involuntarily annexed without notice under the prior law so that they could take whatever steps they thought were necessary to express their views. Leland Grove's argument that the forced annexation is legally "initiated" upon passage of the resolution authorizing publication would preclude the property owners from any effective means of preventing such an annexation, even where other contiguous municipalities are vested with annexation jurisdiction. We therefore conclude that fundamental fairness dictates that the property owner must be allowed to choose between the several municipalities vested with annexation jurisdiction, as the landowner is the party most directly affected by the extension of municipal regulations, and that to hold that an involuntary annexation proceeding pursuant to section

7—1—13 is initiated prior to the passage of the annexation ordinance would nullify the effect of the notice requirement of section 7—1—13 (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13) and eliminate the opportunity of a property owner to effectively respond.

■ Leland Grove argues that Springfield failed to plead and prove by affirmative evidence that all of the circumstances imposed by the statute under which it purported to annex the territory in question were present.

In *People ex rel. Town of Richwoods v. Peoria* (1967), 80 Ill. App. 2d 359, 363-65, 225 N.E.2d 48, 51, the court set forth the law applicable to the defendant's burden in a *quo warranto* proceeding challenging a municipality's jurisdiction over purportedly annexed territory, stating:

"An examination of the rationale in cases where the use of *quo warranto* to attack annexations has been discussed, warrants a distinction between instances where the proceedings used were purely legislative in character, and instances where the annexation is effected by judicial act. In the first instance, it is not enough for the municipality, in order to establish justification, to plead and prove only its own official acts by which the annexation was purportedly effected, but it must prove also by affirmative evidence that all the circumstances imposed by statute, as a prerequisite to the valid exercise of that power, were present. The reason for this requirement in the case where the annexation was effected purely by a legislative act is made apparent from the case of *People v. City of Peoria*, 166 Ill. 517, 46 N.E. 1075. The challenged annexation in that case was initiated and concluded by a municipal ordinance which made certain findings of fact to the effect that a petition for annexation presented to the council complied with the requirements of statute, and on the basis of that finding, the disputed territory was therein recited to be annexed. The People replied to the City's plea of justification by alleging that the petition of owners and legal voters to the City for annexation, which the council found to be in proper form, and from which it derived its power to act, was not in fact signed by three-fourths of the legal voters residing within the described territory. In holding that the City did not prove a justification merely by presenting the documentary evidence of its official acts whereby the annexation was effected, the Supreme Court at 166 Ill. 517, 526, 46 N.E. 1075, stated:

'As a prerequisite to the passage of the ordinance annex-

ing the territory, the city council was authorized to ascertain the facts which constituted the statutory conditions upon which it could exercise the power, but this finding of such facts and recital of them in the ordinance are not evidence of their truth when the corporation is called upon by the State itself to answer by what authority it has assumed jurisdiction over the territory in question. To so hold would be tantamount to holding that it was justified in annexing the territory because it had concluded that the conditions existed under which it had the lawful right to annex it and had annexed it,—in other words, that the City was justified in annexing the territory because it had itself so decided.'

Thus, in that case, by *quo warranto*, the City was required to go behind the recitations in its ordinance, and by affirmative evidence, show that the facts which the ordinance found to be true, and the truth of which gave rise to the power of annexation, were in fact true."

Furthermore, the court in *People ex rel. Karns v. Village of Caseyville* (1968), 99 Ill. App. 2d 60, 63, 241 N.E.2d 23, 24, in considering a *quo warranto* proceeding challenging the annexation by the village of Caseyville, stated that the defendant was required:

"[T]o not only plead and prove its own official acts by which the annexation was effected, but also to plead and prove by affirmative evidence that all of the circumstances imposed by the statute under which it purported to annex the territory in question were present. Chapter 112, §11, Ill Rev Stats; *People [ex rel. Town of Richwoods] v. City of Peoria*, 80 Ill. App. 2d 359, 225 N.E.2d 48; *People ex rel. Cooney v. City of Peoria*, 166 Ill. 517, 46 N.E.2d 1075."

See also *People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 455, 513 N.E.2d 408, cited in Leland Grove's motion to cite additional authority.

Section 7—1—8 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—8) provides, in pertinent part:

"Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality at the time of annexation and which territory has no electors residing therein, or any such territory with electors residing therein, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory and by at least 51% of the electors residing therein shall be filed with the municipal clerk. The petition

shall request annexation and shall state that no electors reside therein or that at least 51% of such electors residing therein join in the petition, whichever shall be the case, and shall be under oath. The corporate authorities of the municipality to which annexation is sought shall then consider the question of the annexation of the described territory. A majority vote of the corporate authorities then holding office is required to annex. The vote shall be by "yeas" and "nays" entered on the legislative records. A copy of the ordinance annexing the territory together with an accurate map of the annexed territory shall be recorded with the recorder and filed with the County Clerk within the county wherever the annexed territory is located."

Springfield's answer to Leland Grove's complaint in *quo warranto* alleged, in pertinent part:

"1. On June 21, 1985, a written petition (hereinafter 'voluntary annexation petition') signed by the owners of record of all land within the territory described therein and by at least 51% of the electors residing therein was filed in the office of the City Clerk of the City of Springfield pursuant to Section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 7—1—8). A true and accurate copy of said petition is attached hereto as Exhibit A.

2. All of the land within the territory described in said voluntary annexation petition is included within the territory described in paragraph 1 of the Complaint, which territory the City of Leland Grove purports to have annexed.

3. Pursuant to the voluntary annexation petition, the City of Springfield adopted Ordinance No. 722—7—85 annexing the territory described therein on July 30, 1985. A true and accurate copy of said ordinance is attached hereto as Exhibit B.

4. On August 5, 1985, Defendant filed in the office of the Recorder of Sangamon County the Affidavit attached hereto as Exhibit C showing compliance with the statutory requirements contained in Section 7—1—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 7—1—1).

5. The documents constituting Exhibits A, B, and C to this Answer and those referenced thereby, and the action taken as set forth in Paragraph 1 through 4 of part II of this Answer, constitute compliance with all statutory requirements for the annexation of the territory described in said Exhibit A.

6. The annexation by Defendant pursuant to the voluntary

annexation petition filed June 21, 1985, was initiated first in time and thus has priority over the two involuntary annexation ordinances passed by City of Leland Grove on June 22 and June 24, 1985."

It would appear that Springfield's answer sufficiently alleged that the circumstances imposed by the relevant statute were present, as required by *Karns*.

■ Leland Grove also contends that Springfield proceeded under the wrong section of the annexation statute (section 7—1—8 instead of section 7—1—12 (Ill. Rev. Stat. 1985, ch. 24, pars. 7—1—8, 7—1—12)). Section 7—1—12 deals with "contiguous unincorporated territory wholly bounded by 2 or more municipalities," whereas section 7—1—8 simply requires the property in question to be "contiguous." However, as Springfield points out in its reply brief, the property sought to be annexed by Springfield was not totally surrounded by two or more municipalities due to the fact that a small parcel of land adjacent to the territory sought to be annexed belonged to an individual other than Donovan and was not included in the petition. As Springfield points out, section 7—1—12 requires a majority of owners of the land to join in the petition. Since there were apparently two owners, both owners were required to join in the petition for a valid section 7—1—12 annexation to occur (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—12), and the existence of the parcel not owned by Donovan prevented the property described in the petition from being wholly bounded by two or more municipalities.

■ Leland Grove, by way of cross-appeal, contends that the trial court erred in refusing to award Leland Grove attorney fees and to impose fines against Springfield. Section 18—108 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 18—108) provides that the court *"may"* fine a party in a *quo warranto* proceeding. The language of the statute clearly indicates that the imposition of a fine and costs is discretionary with the trial judge. In *People ex rel. McGrady v. Carmody* (1968), 104 Ill. App. 2d 137, 243 N.E.2d 19, the court held that the imposition of a fine under the *quo warranto* statute is discretionary with the court. Leland Grove contends that the trial court abused its discretion in failing to impose a fine in the instant case.

Leland Grove contends that "neither the *quo warranto* statute, nor the cases construing it, provides guidance whether a fine would be appropriate based on the facts of this case" and asks this court to follow the standard for imposition of punitive damages in a fraud case in determining whether a fine should have been imposed in the instant case.

Punitive damages may be allowed where the fraud is gross or where the case presents other extraordinary or exceptional circumstances clearly showing malice or wilfullness. (*Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 483 N.E.2d 1225.) The determination of whether to impose punitive damages is an issue for the sound discretion of the trial court, and the decision of the trial court will not be set aside absent an abuse of discretion. (*Monotronics Corp. v. Baylor* (1982), 107 Ill. App. 3d 14, 436 N.E.2d 1062; *Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 470 N.E.2d 1047.) Based upon the record presented for review, we are unable to conclusively conclude whether gross fraud or other extraordinary circumstances are present in this case. This is an issue which can be raised in subsequent proceedings in this cause.

■ Leland Grove also argues that attorney fees should be assessed against the city of Springfield. However, as Springfield points out, attorney fees are not awardable in a civil action unless the statute creating the cause of action specifically provides that attorney fees may be recovered by the prevailing party. *Thomas v. Kaiser Agricultural Chemicals* (1979), 74 Ill. App. 3d 522, 392 N.E.2d 1141.

The language of section 18—108 does not include any reference to awarding attorney fees in a *quo warranto* action. Consequently we conclude that the trial court was correct in refusing to award attorney fees in this cause.

■ Having concluded that Leland Grove's section 7—1—13 annexation proceeding (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13) was not legally initiated until the passage of the annexation ordinance on June 22 and June 24, 1985, and that Springfield's answer sufficiently alleged that the circumstances imposed by the relevant statute were present, we further conclude that a substantial issue of material fact exists regarding whether the Donovan petition was filed prior to or after the passage of the Leland Grove annexation ordinance. Furthermore, numerous questions of material fact exist regarding the validity of the Donovan petition.

Section 2—1005(c) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c)) provides, in pertinent part, that summary judgment:

> "[S]hall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Under the circumstances of this case, since numerous issues of mate-

954

rial fact were present, and it is not clear that Leland Grove is entitled to a judgment as a matter of law, we therefore conclude that the trial court erred in granting summary judgment to Leland Grove.

For the reasons stated herein, the order of the circuit court granting summary judgment in favor of Leland Grove is hereby reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

GREEN, P.J., and LUND, J., concur.