THE PEOPLE *ex rel.* THE VILLAGE OF BUFFALO GROVE, Plaintiff-Appellant and Cross-Appellee, v. THE VILLAGE OF LONG GROVE, Defendant-Appellee and Cross-Appellant (Otis Development Company *et al.*, Plaintiffs; Lane Industries, Inc., *et al.*, Intervenors-Appellants).

Second District No. 2—87—0946

Opinion filed July 13, 1988.

William G. Raysa, of Bloche, French & Raysa, of Oak Park (Richard D. Skelton, of counsel), for appellant.

Conzelman, Schultz, Snarski & Mullen, of Waukegan, and James R. Schirott, of Schirott & Associates, P.C., of Itasca (John M. Mullen, of counsel), for appellee Village of Long Grove.

Arthur J. Schiller, of Hurley & Kallick, Ltd., of Northbrook, for appellees Lane Industries, Inc., and Northbrook Trust & Savings Bank.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Village of Buffalo Grove (Buffalo Grove), filed a petition for leave to file a complaint in *quo warranto* in the circuit court of Lake County contesting the validity of an annexation by defendant, Village of Long Grove (Long Grove). Lane Industries, Inc., and Northbrook Trust & Savings Bank intervened as defendants. Following a hearing on August 31, 1987, the trial court entered an order on October 6, 1987, in which it denied Buffalo Grove's amended petition to file a complaint in *quo warranto* on the basis that it did not show Buffalo Grove had a private interest to institute the complaint. Buffalo Grove filed this appeal, and defendants filed a cross-appeal.

Buffalo Grove, in its appeal, raises the issue of whether the trial court abused its discretion in denying Buffalo Grove's petition for leave to file a complaint in *quo warranto*. Defendants, in their cross-appeal, raise the issues of whether Buffalo Grove abandoned its annexation proceeding and whether Buffalo Grove was barred by *laches* from filing a petition for leave to file a complaint in *quo warranto*; these issues were decided adverse to defendants below even though the judgment was for defendants on a different basis.

The parcel of land at issue in this case adjoins Long Grove on its, the parcel's, north side and otherwise abuts Buffalo Grove. It essentially consists of a northern parcel (Otis parcel) which abuts both Long Grove and Buffalo Grove and a southern parcel (Lane parcel) which adjoins the northern parcel and also abuts Buffalo Grove. The northern parcel was in a land trust the trustee of which was Northbrook Trust & Savings Bank (Northbrook Trust), and the beneficial owner was Otis Development Company (Otis). The southern parcel was also in a land trust whose trustee was Northbrook Trust, and the beneficial owner was Lane Industries, Inc. (Lane).

In December 1986, Otis met with the Buffalo Grove village manager to discuss possible annexation of the Otis parcel into Buffalo Grove. On January 7, 1987, Buffalo Grove received a petition for concept and preliminary plan review from Otis. On January 17, 1987, Long Grove published notice in the Chicago Tribune, pursuant to section 7—1—13 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13), of its intent to annex both parcels of land. On January 23, 1987, Otis filed a voluntary petition to annex its property to Buffalo Grove pursuant to section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—8). On January 27, 1987, Long Grove passed an ordinance annexing both the Otis and Lane parcels. On February 16, 1987, Long Grove notified Buffalo Grove of

its annexation of the property and notified the property owners on February 26, 1987.

Beginning in January 1987, and continuing into June 1987, Buffalo Grove engaged in the process of reviewing and assessing the petition for voluntary annexation filed by the owners of the Otis parcel. On June 1, 1987, Buffalo Grove passed an ordinance annexing the Otis parcel.

Several events occurred between the time that Otis first filed its voluntary annexation petition and Buffalo Grove's eventual passage of its annexation ordinance. On March 2, 1987, the beneficial owners of the Otis parcel notified Long Grove by letter that there was an error in the legal description of the Otis parcel contained in the Long Grove annexation ordinance. On March 24, 1987, Long Grove adopted a second annexation ordinance which incorporated the original ordinance, but corrected the error in the legal description. On March 27, 1987, Buffalo Grove, Northbrook Trust, and Otis filed a petition for leave to file a complaint in *quo warranto*. On April 20, 1987, Long Grove filed its objection to the petition.

On April 9, 1987, Lane petitioned Long Grove for the zoning necessary to allow construction of a financial institution as well as other retail buildings. On April 28, 1987, Long Grove adopted an ordinance giving preliminary approval for Lane's zoning request.

On May 18, 1987, the trial court held a hearing on the petition for leave to file a complaint in *quo warranto* and continued the matter to May 28, 1987, at which time an agreed order was entered into by Otis and Long Grove. The agreed order provided that Otis would petition Long Grove for zoning approval for its parcel and Long Grove would expedite consideration of the petition. Buffalo Grove was not a party to the order. On May 26, 1987, Otis filed its petition for rezoning with Long Grove, and on July 28, 1987, Long Grove adopted an ordinance giving preliminary approval for development of the Otis parcel. The ordinance also required Otis and Northbrook Trust to dismiss with prejudice their pending petition for leave to file a complaint in *quo warranto* within 10 days of their receiving final approval from Long Grove.

On August 10, 1987, Otis and Northbrook Trust filed an amended motion for voluntary dismissal with prejudice pursuant to section 2–1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–1009) which was granted. Also, on August 10, 1987, Lane and Northbrook Trust were granted leave to intervene as defendants.

On August 20, 1987, Buffalo Grove was granted leave to file an amended petition for leave to file a complaint in *quo warranto*. Lane

filed an objection to the original petition on the same date. Long Grove filed an objection to the amended petition on August 27, 1987. A hearing on the amended petition for leave to file a complaint in *quo warranto* was held on August 31, 1987.

Following arguments, the trial court ruled that Buffalo Grove's petition failed to establish that Buffalo Grove had a sufficient private or public interest to institute a complaint in *quo warranto*. The court also found in its order that Buffalo Grove did not abandon its annexation nor was it barred by *laches*.

Both parties raise numerous contentions on appeal. Buffalo Grove maintains that it has standing to bring a suit in *quo warranto* because it had priority jurisdiction by virtue of Otis' filing of its voluntary annexation petition before Long Grove's annexation ordinance. It further argues that the newspaper notice published by Long Grove provided insufficient notice, was inadequate in its legal description, and did not give Long Grove any priority jurisdiction over the Otis parcel. Buffalo Grove also contends it has standing by virtue of its passage of an annexation ordinance on June 1, 1987. Long Grove responds that Buffalo Grove cannot rely on its own annexation, which occurred after the filing of its petition for leave to file a complaint in *quo warranto*, as a basis for standing to maintain a complaint in *quo warranto*. Long Grove also argues that the annexation ordinance is a nullity because it was passed after initiation of the *quo warranto* proceedings. It further maintains that Buffalo Grove's amended petition was deficient in that it is barred by Supreme Court Rule 273 (107 Ill. 2d R. 273). Additionally, Long Grove urges affirmance of the trial court's dismissal of the amended petition because the public interest would be harmed by a *quo warranto* action. Finally, in its cross-appeal, Long Grove contends the trial court erred in finding that Buffalo Grove had not abandoned its annexation proceeding and that Buffalo Grove was not barred by *laches* from proceeding in *quo warranto*.

 Although both parties have raised numerous contentions on appeal, we find the standing issue to be dispositive. The decision to grant or deny leave to file a complaint in *quo warranto* is within the sound discretion of the trial court. (*Schallau v. City of Northlake* (1979) 82 Ill. App. 3d 456, 463, 403 N.E.2d 266; *People ex rel. Koplin v. Village of Hinsdale* (1976), 38 Ill. App. 3d 714, 718, 348 N.E.2d 483.) An action in *quo warranto* may be instituted by a citizen if he can demonstrate a refusal by the Attorney General and State's Attorney to pursue the matter and if he can show an invasion of a private interest sufficiently distinct from the general public's interest. (*People*

*ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 162 Ill. App. 3d 340, 345, 515 N.E.2d 438.) A municipality is a "citizen" who may initiate a *quo warranto* proceeding if it alleges that its territory has been annexed by another municipality. (162 Ill. App. 3d at 345, 515 N.E.2d at 442.) A municipality's governmental interest in property outside its boundaries, however, does not give it the requisite interest to pursue such a proceeding. *People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 92, 451 N.E.2d 293; *People ex rel. Brooks v. Village of Lisle* (1974), 24 Ill. App. 3d 432, 435, 321 N.E.2d 65.

■■■ Nevertheless, the first party to initiate an annexation or incorporation proceeding has priority over the territory against all parties initiating such proceedings at a later date. (*Koeppel v. Ives* (1982), 92 Ill. 2d 523, 529, 442 N.E.2d 176.) A petition filed by a municipality gives that municipality priority jurisdiction over the particular parcel of unincorporated property to be annexed. (*City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, 166, 180 N.E.2d 488.) This is also true where the property owners file a petition with the municipality for voluntary annexation. (*People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 67-68, 177 N.E.2d 313.) A municipality loses its priority jurisdiction, however, if it engages in unnecessary and unreasonable delay in acting on the petition. (*City of Countryside*, 24 Ill. 2d at 167, 180 N.E.2d at 490; *People ex rel. Village of Worth*, 23 Ill. 2d at 67-68, 177 N.E.2d at 315-16; *People ex rel. Village of Long Grove*, 162 Ill. App. 3d at 346, 515 N.E.2d at 442-43.) Such priority jurisdiction over a particular parcel of property, if not abandoned through unnecessary and unreasonable delay, will confer standing to a municipality to challenge in *quo warranto* the subsequent annexation of the same parcel by another municipality. 162 Ill. App. 3d at 346-47, 515 N.E.2d at 443.

Long Grove argues that because it published notice in the Chicago Tribune, pursuant to section 7—1—13 of the Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13), prior to the voluntary petition being filed with Buffalo Grove, it has priority jurisdiction over the Otis and Lane parcels. The necessary question to be decided, then, is whether publication of notice under section 7—1—13 constitutes initiation of an annexation proceeding comparable to the filing of the petition pursuant to section 7—1—8, for if it does, then such publication would give priority jurisdiction to Long Grove which would deprive Buffalo Grove of its priority jurisdiction and, therefore, its standing in this case.

In *People ex rel. City of Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943, 520 N.E.2d 1205, *appeal denied* (1988),

122 Ill. 2d 592, the court addressed this precise issue in holding that newspaper notice pursuant to section 7—1—13 does not constitute initiation of annexation proceedings and, therefore, does not give priority to the municipality publishing the notice. (166 Ill. App. 3d at 948-49, 520 N.E.2d at 1208-09.) The court held further that legal initiation of a section 7—1—13 annexation proceeding occurs when the annexation ordinance is passed. 166 Ill. App. 3d at 948, 520 N.E.2d at 1208.

■ Upon a close reading of that case, we are compelled to follow the reasoning set forth therein and, likewise, hold that, in this case, Long Grove's publication of notice pursuant to section 7—1—13 did not give it priority interest in the Otis and Lane parcels. The filing of the voluntary petition by Otis pursuant to section 7—1—8, prior to the passage of Long Grove's annexation ordinance, gave Buffalo Grove a priority interest over the Otis parcel which was sufficient to confer standing to challenge, in a *quo warranto* suit, the subsequent annexation of that same parcel by Long Grove. Because of our determination that Long Grove did not acquire priority jurisdiction by virtue of its publication of notice under section 7—1—13, we find it unnecessary to address Buffalo Grove's alternative challenge to the sufficiency and adequacy of that notice.

■ While Long Grove has advanced several other arguments to support the trial court's order, we find them to be without merit. Long Grove raised the issue below and on appeal that the public interest would be harmed, not served, by Buffalo Grove's filing of a complaint in *quo warranto*. On this record, however, there is no showing by Long Grove that the public interest would be harmed if Buffalo Grove is allowed to file a *quo warranto* action. Any potential harm to the property owners who agreed to annexation by Long Grove is a private harm which does not operate to bar filing of this suit by Buffalo Grove.

■ Long Grove also contends that Buffalo Grove's petition for leave to file a complaint in *quo warranto* is barred by operation of Supreme Court Rule 273 (107 Ill. 2d R. 273) upon the dismissal with prejudice of Otis and Northbrook Trust from the litigation upon their motion. This contention is baseless as their motion to dismiss themselves from the *quo warranto* suit, was a voluntary dismissal pursuant to section 2—1009 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009) and Rule 273 is applicable only to involuntary dismissals. In any event, Buffalo Grove was also a party to the petition seeking leave to file a complaint in *quo warranto* and the dismissal of the other two parties is not an adjudication as to Buffalo Grove.

■ We further note that Long Grove challenges the finding of the trial court on the abandonment and *laches* issues in its cross-appeal. A party who has obtained by judgment all that was sought in the trial court cannot appeal that judgment. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386, 457 N.E.2d 9.) It is the judgment that gives rise to an appeal and not what else may have been said by the trial court. (98 Ill. 2d at 387, 457 N.E.2d at 12.) Specific findings adverse to the appellee do not require a cross-appeal so long as the judgment was entirely in favor of the appellee. (98 Ill. 2d at 387, 457 N.E.2d at 12.) Thus, Long Grove's cross-appeal must be dismissed.

Even if these issues were properly presented in Long Grove's brief answering Buffalo Grove's appeal, we could not address them on this record. There was no evidence introduced in the trial court relevant to abandonment or *laches* other than oral arguments of the attorneys, and, as such, we have no basis to decide those factual issues in this appeal. Upon remand, proofs may be properly presented on these issues.

For the foregoing reasons, the judgment of the circuit court of Lake County denying Buffalo Grove leave to file an amended complaint in *quo warranto* is reversed, and the cause remanded for further proceedings.

Reversed and remanded; cross-appeal dismissed.

LINDBERG, P.J., and UNVERZAGT, J., concur.